**BOSTON TELECOMMUNICATIONS
GROUP, INC.; Roderick Marshall,**
Plaintiffs–Appellants,

v.

**DELOITTE TOUCHE TOHMATSU;
Robert Wood; George A. Mainas;
Consolidated Global Cable Systems,
Inc.; Deloitte & Touche Central Europe; Deloitte & Touche Slovakia,
S.R.O.,** Defendants–Appellees.

No. 04–15983.

United States Court of Appeals,
Ninth Circuit.

Argued April 6, 2006.

Submitted Sept. 5, 2007.

Filed Sept. 27, 2007.

---

* Peter D. Keisler is substituted for his predecessor, Alberto R. Gonzales, as Acting Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

** The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

David C. Phillips, Esq., Phillips Erlewine & Given, San Francisco, CA, Steven M. Cowley, Esq., Brian H. Lamkin, Esq., Mark B. Dubnoff, Esq., Edwards & Angell LLP, Boston, MA, for Plaintiffs–Appellants.

Michael J. Dell, Esq., Kramer Levin Naftalis & Frankel, LLP, New York, NY, Frederick S. Fields, Esq., Susan K. Jamison, Esq., Zuzana Svihra, Esq., Coblentz Patch Duffy & Bass, LLP, San Francisco, CA, George S. Trevor, Esq., James V. Weixel, Jr., Esq., Trevor & Weixel LLP, Corte Madera, CA, Travers D. Wood, Esq., Monica V. Ramallo–Smith, Esq., White & Case, LLP, Los Angeles, CA, for Defendants–Appellees.

Before: NOONAN, SILER *, and BYBEE, Circuit Judges.

## MEMORANDUM **

Boston Telecommunications Group, Inc. ("BTG") and Roderick Marshall ("Marshall") appeal the district court's dismissal of their claims against Robert Wood ("Wood"), Deloitte & Touche Slovakia, s.r.o. ("Deloitte Slovakia"), Deloitte & Touche Central Europe, and Deloitte Touche Tohmatsu for lack of personal jurisdiction. They also appeal the district court's dismissal of their claims against George Mainas ("Mainas") and Consolidated Global Cable Systems, Inc. ("CGCS") in favor of arbitration. We reverse in part and affirm in part.

## I.  Standard of Review

We review a district court's decision to dismiss for lack of personal jurisdiction *de novo*. *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir.2004). We review a district court's decision to grant or deny a motion to compel arbitration *de novo*. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir.2004).

## II.  Personal Jurisdiction—Wood

"The Due Process Clause [of the Fourteenth Amendment] protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The requirement that a court have personal jurisdiction is an individual right that may be waived either explicitly or implicitly. *See Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). "[U]nlike subject-matter jurisdiction, which even an appellate court may review *sua sponte* ... '[a] defense of lack of jurisdiction over the person ... is waived' if not timely raised in the answer or a responsive pleading." *Id.* at 704, 102 S.Ct. 2099 (quoting Fed.R.Civ.P. 12(h)).

Appellants argue that Wood waived any Fed.R.Civ.P. 12(b)(2) personal jurisdiction defense by failing to include it along with his initial Rule 12(b)(5) motion to dismiss for insufficiency of service of process. Wood maintains that he preserved his Rule 12(b)(2) defense through a memorandum he filed in support of the Rule 12(b)(5) motion. This memorandum included a footnote stating that Wood "reserves his rights and objections to file a supplemental motion to dismiss, pursuant

---

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

to 12(b)(2) and (3)." Wood further contends he could not at the time move for dismissal under Rule 12(b)(2) because he had not seen a copy of the complaint.

Rule 12(g) provides, in pertinent part:

If a party makes a motion under [Rule 12] but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted. . . .

Fed.R.Civ.P. 12(g). Rule 12(h)(1) further provides, in pertinent part, that:

A defense of *lack of jurisdiction over the person,* improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof. . . .

Fed.R.Civ.P. 12(h)(1) (emphasis added). This Circuit has construed these provisions strictly, observing that "[a] fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed. R.Civ.P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived." *American Ass'n of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1106 (9th Cir.2000). Under Rules 12(g) and 12(h), Wood waived his Rule 12(b)(2) defense by omitting it from his initial motion.

This Court is not persuaded by Wood's argument that imperfect service foreclosed his ability to move for dismissal under Rule 12(b)(2) at the same time he moved for dismissal under Rule 12(b)(5). Appellants filed their initial complaint on December 31, 2002 and attempted service at Wood's business address in Bratislava. Some time in February 2003, Wood obtained California counsel, who notified Appellants that Wood would not waive service of process and that Wood insisted on service according to the Hague Convention on the Service Abroad of Judicial and Extra-judicial Documents in Civil or Commercial Matters (1969). Wood's obtaining of California counsel suggests he had sufficient notice of Appellants' jurisdictional choice to mount a Rule 12(b)(2) defense. On April 4, 2003, Appellants attempted service at Wood's former home in North Carolina, then the residence of his ex-wife. Wood's ex-wife testified that she called her husband regarding the complaint and summons. On April 23, 2003, Wood filed his Rule 12(b)(5) motion for insufficient service of process. On May 20, 2003, Appellants sent Wood's counsel a copy of the amended complaint. On July 18, 2003, the district court heard argument on Wood's motion to dismiss.

This sequence of events indicates that Wood and his attorneys were sufficiently aware of the complaint to file a Rule 12(b)(2) motion. Wood's attorneys in fact possessed a copy of the amended complaint for two months prior to the district court's hearing of Wood's motion to dismiss. Wood might have amended his motion to dismiss to include the Rule 12(b)(2) defense during this time but he did not. This Court therefore finds no equitable reason for suspending the strict application of Rules 12(g) and 12(h).

We reverse the district court's ruling that Wood did not waive his Rule 12(b)(2) defense and its order permitting Wood to join the Deloitte defendants' subsequent motion to dismiss for lack of personal jurisdiction.

## III. Personal Jurisdiction—The Deloitte Defendants

Appellants argue that the district court possessed jurisdiction over the De-

loitte defendants because it possessed jurisdiction over Wood, the purported agent of the Deloitte defendants. "For purposes of personal jurisdiction, the actions of an agent are attributable to the principal." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.1990). When dealing with an assumed agent, one has a duty to ascertain the extent and nature of the authority. *S. Sacramento Drayage Co. v. Campbell Soup Co.*, 220 Cal.App.2d 851, 857–58, 34 Cal.Rptr. 137 (1963):

> It is therefore declared to be a fundamental rule, never to be lost sight of and not easily to be overestimated, that persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound at their peril, if they would hold the principal, to ascertain not only the fact of the agency but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it.

220 Cal.App.2d at 857–58, 34 Cal.Rptr. 137.

Appellants' support for Wood being an agent of the Deloitte defendants is that Wood served as Deloitte Slovakia's statutory executive, procurist, and office managing partner and that he allegedly made several fraudulent representations to Marshall on behalf of Deloitte Slovakia. Appellants, however, have not alleged sufficient facts to show that Wood's authority as an employee of Deloitte Slovakia covered his attendance and representations at the California meetings.

We affirm the district court's finding that Wood was not the agent of the Deloitte defendants and its ruling dismissing Appellants' claims against the Deloitte defendants for lack of personal jurisdiction.

## IV. Arbitration

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation marks and citations omitted). "The standard for demonstrating arbitrability is not high," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir.1999), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. 3346. "[T]he most minimal indication of the parties' intent to arbitrate must be given full effect." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir.1991). In determining whether a party has agreed to submit a certain type of dispute to arbitration, courts must first determine the breadth of the arbitration clause. *Simula*, 175 F.3d at 720.

Article 11 of the partnership agreement between Global Satellite Transmission Systems, Inc. ("GSTS") and BTG requires that "[a]ny disputes arising out of the interpretation of this agreement or with respect to the conduct of Partnership business shall be settled by arbitration...." This language signifies that the parties intended the arbitration clause to cover a broad scope of disputes relating to the partnership's business. The language is sufficiently broad to cover the nature of Appellants' claims against Mainas and CGCS.

Appellants further contend that neither Mainas nor CGCS has standing to enforce the agreement because the agreement

stipulates that there are to be no third party beneficiaries outside of the "Partners" to the agreement:

> Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or to give to any person, firm, or corporation, other than the Partners, any rights or remedies hereunder or by any reason hereof.

This provision weighs in favor of the Appellants because while CGCS is a signatory to the agreement, only CGCS' subsidiary, GSTS, is designated specifically as a "Partner." That said, the agreement also includes the following provision:

> Except as herein otherwise provided, this Agreement shall inure to the benefit of and shall be binding upon the heirs, representative [sic], successors, and assigns of the Partners....

This provision suggests that notwithstanding the "no third-party" language, the provisions of the agreement are also binding upon the Partners' representatives.

Although not a partner, CGCS is identified in the agreement as a party responsible for the joint venture and for undertaking specific tasks and responsibilities in connection with partnership business. Notably, CGCS guarantees GSTS' debt, CGCS agrees to provide management services for the partnership assets, and CGCS agrees to enter into an escrow agreement for the guarantee. Reading all of the provisions of the agreement together, we think that the parties intended the arbitration provision to benefit CGCS as a representative of GSTS and a signatory to the agreement. Permitting CGCS to compel arbitration is consistent with the parties' intentions.

█ Mainas, in contrast to CGCS, is a nonsignatory to the agreement. This Court has held that nonsignatories of arbitration agreements may be bound under

ordinary contract and agency principles. *Britton v. Co-op Banking Group,* 4 F.3d 742, 745 (9th Cir.1993). Appellants allege that Mainas "as CEO and director of CGCS was an agent for CGCS when he engaged in conduct within California that gave rise ... to this action." Because the parties intended the arbitration provision to cover CGCS and because Mainas is an agent of CGCS, Mainas also has standing to compel arbitration.

We affirm the district court's order granting Mainas' and CGCS' motion to dismiss in favor of arbitration.

## V. Conclusion

We REVERSE the district court's judgment dismissing Wood and REMAND for further proceedings. We AFFIRM the judgment of the district court dismissing the Deloitte defendants for lack of personal jurisdiction and the district court's order granting Mainas' and CGCS' motion to dismiss in favor of arbitration.

Each party is to bear its own costs on this appeal.