Cite as 2022 Ark. App. 59

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-19-686

| | |
|---|---|
| ELAINE PETROLEUM DISTRIBUTOR, INC., AND QINGDAO XIYINGMEN DOUBLE CAMEL TYRE CO., LTD.<br>            APPELLANTS/CROSS-APPELLEES<br><br>V.<br><br><br>BETSY SNYDER, ADMINISTRATRIX OF THE ESTATE OF MICHAEL SNYDER, DECEASED<br>            APPELLEE/CROSS-APPELLANT | Opinion Delivered February 9, 2022<br><br>APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54CV-13-204]<br><br><br>HONORABLE RICHARD L. PROCTOR, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL; CROSS-APPEAL DISMISSED |

## BART F. VIRDEN, Judge

In this products-liability case, appellee Michael Snyder[1] was injured when a tire

manufactured by appellant Qingdao Xiyingmen Double Camel Tyre Co., Ltd., and sold by

Elaine Petroleum Distributors, Inc., exploded while he was mounting it.[2] A jury returned a

verdict for Snyder on all of his claims, assessing his damages at $2.5 million and finding

Qingdao 75 percent at fault and Elaine Petroleum 25 percent at fault. On appeal, Qingdao

---

[1]Michael Snyder died after the trial while this appeal was being perfected. Sandra Snyder, his wife, was substituted as plaintiff in this case. Sandra Snyder has now passed away. Betsy Snyder was appointed administratrix of the estate of Michael Snyder by the Phillips County Circuit Court and substituted as the appellee in this case.

[2]Elaine Petroleum was originally an appellant in this case. However, Snyder and Elaine Petroleum reached a settlement while this appeal was pending and Elaine Petroleum was dismissed from the appeal and cross-appeal by order of this court entered on September 16, 2020.

argues that it lacks sufficient minimum contacts with Arkansas, that the circuit court should have directed a verdict in its favor on Snyder's negligence and warranty claims, that the court should not have allowed evidence of subsequent warranty claims occurring after the incident in question over a subsequent-remedial-measures objection, and that the court should have granted a new trial or ordered remittitur because the damages award was excessive and not supported by substantial evidence. Snyder cross-appeals from the form of the judgment or, alternatively, argues that Elaine Petroleum's proportionate share of fault should be increased. We affirm on direct appeal and dismiss the cross-appeal.

I. *Factual Background & Procedural History*

On July 25, 2011, Michael Snyder was working in his family-owned mechanic's shop airing up a trailer tire that he was mounting on a wheel for a customer when the tire exploded, hitting Snyder and causing serious injury to him. Qingdao, a Chinese company, manufactured the tire, and it was sold to Snyder's customer by Elaine Petroleum.

Snyder filed his complaint against both Qingdao and Elaine Petroleum on September 4, 2013.[3] Snyder's complaint as amended asserted claims for negligence, breach of express and implied warranties, and strict liability against the defendants. Qingdao filed a document captioned "Motion to Dismiss and Answer to First Amended Complaint" on June 20, 2014. Qingdao contended that the circuit court lacked personal jurisdiction because it was not properly and timely served with process. On July 24, 2014, Qingdao filed a brief in support of its motion to dismiss. In addition to the service issues, Qingdao raised for the first time

---

[3]Snyder also sued the maker of the tire-mounting machine he had been using at the time of the accident. The claims against the tire-mounting machine manufacturer were eventually dismissed.

the issue of whether it had sufficient minimum contacts with Arkansas and whether Snyder had properly pled facts showing such contacts.

The hearing on Qingdao's motion to dismiss focused on whether Qingdao had sufficient minimum contacts with Arkansas. Snyder argued that Qingdao had waived the issue because it had not raised the issue in its answer and motion. At the conclusion of the hearing, the court denied the motion from the bench, finding that Qingdao's placing the tire in the stream of commerce to be used by customers in the United States was sufficient contact with the State of Arkansas to give the Arkansas courts jurisdiction over it. The court reasoned that to rule otherwise would effectively make the manufacturer immune from suit. In its written order, the circuit court found that Qingdao had sufficient contacts with the State of Arkansas to give the court jurisdiction over the parties and the subject matter of the lawsuit.

The case proceeded to trial before a jury in October 2018. The circuit court instructed the jury on strict liability, negligence, implied warranty, and express warranty. The jury answered special interrogatories at the close of the case making separate findings of liability on each of Snyder's claims. In interrogatory 1, the jury found that the tire manufactured, sold, assembled, or otherwise distributed by the defendants was in a defective condition that rendered it unreasonably dangerous and that it caused damages to Snyder. In interrogatories 2 and 3, the jury found that each defendant was negligent. Each defendant was also found to have breached implied warranties of fitness for ordinary purposes and express warranties. Damages were assessed at $2.5 million with fault allocated 75 percent to Qingdao and 25 percent to Elaine Petroleum. The jury's allocation of fault resulted in

3

judgment against Qingdao in the sum of $1,875,924.75 and against Elaine Petroleum in the sum of $625,066.25.[4]

Prior to the entry of the judgment, issues arose over the form of the judgment. The parties briefed the issue for the circuit court. The defendants contended the form of the judgment should reflect separate proportional liability as per the jury's allocation of fault. Snyder contended that judgment should be joint and several because the strict-products-liability verdict was not dependent on "fault" as between the defendants. The circuit court agreed with the defendants and entered the defendant's proposed judgment in accordance with the jury's findings on December 3, 2018.

Snyder then moved postjudgment, in the alternative, to have the proportional share of the judgment against Elaine Petroleum increased under Ark. Code Ann. § 16–55–203 (Repl. 2005), arguing that the proportional share of the judgment against Qingdao was not reasonably collectable. Snyder supported the motion with an affidavit from an expert in Chinese legal matters and collection efforts explaining that legal barriers erected by China and the refusal of Qingdao to pay judgments in the past made this judgment "reasonably uncollectable."

Each defendant filed separate posttrial motions for a judgment NOV and remittitur. In its motion, Qingdao asserted that the court lacked jurisdiction over it because of a lack of proper service of process; that the damages were excessive, appearing to have been given under the influence of passion or prejudice; that the court had erred in the admission of

_____

[4]The amount of each judgment included a proportionate share of Snyder's filing fee plus the costs of service on that defendant.

4

certain evidence; and that the court had erred in denying its motions for directed verdict. Qingdao adopted and incorporated the motion and brief of Elaine Petroleum.

The circuit court denied Snyder's motion to increase Elaine Petroleum's liability. Qingdao's motion for JNOV was deemed denied. This appeal and cross-appeal followed.

## II. *Arguments on Appeal and Cross-Appeal*

On appeal, Qingdao argues that the circuit court erred by (1) not directing a verdict in its favor on Snyder's warranty and negligence claims, (2) allowing evidence of warranty claims made after the accident in this case, (3) failing to grant a new trial or ordering remittitur because the damage award was excessive and not supported by substantial evidence, and (4) not granting its motion to dismiss because it lacked sufficient minimum contacts to support personal jurisdiction over it. On cross-appeal, Snyder argues that Elaine Petroleum's proportionate share of liability should be increased to 35 percent under Ark. Code Ann. § 16-55-203 because the proportional share of the judgment against Qingdao was not reasonably collectable. Snyder further argues that the judgment should have been joint and several because the strict-products-liability verdict was not dependent on "fault" as between the defendants.

## III. *Standard of Review*

In reviewing the denial of a motion for new trial, our court will affirm the verdict if it is supported by substantial evidence, giving the verdict the benefit of all reasonable inferences in accordance with the proof. *Sanders v. Union Pac. R.R. Co.*, 2019 Ark. App. 386, 585 S.W.3d 713. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id*. It is only when

5

there is no reasonable probability that the incident occurred according to the version of the prevailing party or when fair-minded persons can only draw a contrary conclusion that a jury verdict should be disturbed. *Id*. We review a circuit court's decision regarding admission of evidence over a subsequent-remedial-measure objection under an abuse-of-discretion standard. *Id*.

IV. *Discussion*

We begin with Qingdao's argument that the circuit court lacked personal jurisdiction over it because Qingdao lacked sufficient "minimum contacts" with Arkansas. Qingdao's argument is that because Snyder amended his complaint and the amended complaint failed to incorporate the allegations in the original complaint, Snyder failed to state sufficient facts showing that Qingdao had sufficient minimum contacts with Arkansas. Snyder argues that Qingdao waived any challenge to jurisdiction on the basis of lack of minimum contacts because it did not timely or properly raise the issue.

Personal jurisdiction is the authority of a court over the parties in a particular case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). To be subject to the jurisdiction of a court in the forum state, the defendant must have minimum contacts with that state such that a suit against it there "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Under Arkansas law, the plaintiff has the burden of proving that a non-resident defendant has sufficient contacts with Arkansas to be sued in personam. *Hawes Firearm Co. v. Roberts*, 263 Ark. 510, 512, 565 S.W.2d 620, 621 (1978). However, the non-resident defendant filing a motion to dismiss has the burden of going forward and offering proof to

6

sustain the allegations of no jurisdiction. *Id*. Here, Qingdao failed to offer any evidence to support its motion to dismiss. Its argument is more that the circuit court erred in not granting its motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6) for Snyder's failure to state sufficient facts in his complaint. However, the circuit court did not clearly and specifically rule on Qingdao's motion to dismiss under Rule 12(b)(6). We will not review a matter on which the circuit court has not ruled. *TEMCO Constr., LLC v. Gann*, 2013 Ark. 202, 427 S.W.3d 651. The circuit court instead concluded that it had personal jurisdiction over Qingdao.

It is well established that the requirement of personal jurisdiction "recognizes and protects an individual liberty interest," which, like other individual rights, may be waived in a variety of ways. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Arkansas Rule of Civil Procedure 12(h) provides as follows:

> (1) A defense of lack of jurisdiction over the person . . . is waived (A) if omitted from a motion in the circumstances described in subdivision (g) [consolidation of defenses in motion], or (B) if it is neither made by motion under this rule nor included in the original responsive pleading. Objection to venue may be made, however, if the action is dismissed or discontinued as to a defendant upon whose presence venue depends.

Ark. R. Civ. P. 12(h)(1). A defense of lack of personal jurisdiction is thus waived "if not timely raised in the answer or a responsive pleading." *Compagnie des Bauxites de Guinee*, 456 U.S. at 704; *see also Strick Lease, Inc. v. Juels*, 30 Ark. App. 15, 780 S.W.2d 594 (1989).

Qingdao filed a "Motion to Dismiss and Answer to First Amended Complaint" on June 20, 2014. Qingdao's pleading contained the following allegations:

> 42. [Qingdao] affirmatively states that Plaintiffs First Amended Complaint should be dismissed for a defective summons, insufficient service of process and insufficiency of process pursuant to Rule 4, Rule 12(b)(4) and Rule 12(b)(5) of the

7

Arkansas Rules of Civil Procedure. Although Plaintiff has attempted to extend the 120 day time limit to perfect service on a defendant, Rule 4(i), Ark. R. Civ. P., Plaintiff did not comply with rules regarding getting the extension. Specifically, to obtain the first extension Plaintiff never filed a Motion to Extend the Time and the Order Extending the Time was entered outside the 120 day limit.

43. [Qingdao] affirmatively states that Plaintiff has failed to comply with service pursuant to the Hague Convention. [Qingdao] was not served with a translated copy of the Summons and Complaint and therefore service under the Hague Convention was improper. Plaintiffs First Amended Complaint should be dismissed for lack of Jurisdiction over [Qingdao]. Rule 12, (b)(2). Ark. R. Civ. P.

These paragraphs cannot reasonably be read as raising the defense of lack of personal jurisdiction. Although Qingdao asserted several Rule 12(b) defenses and other affirmative defenses, in the context of paragraphs 42 and 43, the jurisdictional defenses raised by Qingdao related only to its contention that it was not properly and timely served with the summons and complaint instead of it lacking sufficient minimum contacts with Arkansas.

Although service of process and personal jurisdiction are distinct concepts, they are also closely related, and a court cannot obtain personal jurisdiction without effective service of process. *E.g.*, *Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 709, 120 S.W.3d 525, 530 (2003) (holding that service of valid process is necessary to give a court jurisdiction over a defendant). Moreover, a challenge to the lack of personal jurisdiction under Rule 12(b)(2) must be based on insufficient contacts with the forum state, not on grounds that would support a different Rule 12(b) challenge. *See Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000) (holding that a properly raised insufficient-service-of-process defense does not also preserve a lack-of-personal-jurisdiction defense because the two are separate and different); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360–61 (11th Cir. 2008) ("Simply put, a litigant

must cite each separate Rule 12(b) defense in the pre-answer motion or if no pre-answer motion is filed, then in the responsive pleading. Citing one Rule 12(b) defense in the hope that it will sufficiently raise another defense is not permissible."); *Roque v. United States*, 857 F.2d 20, 22 (1st Cir. 1988) ("If the true objection is insufficient service of process, we do not think it is too much to require a litigant to plainly say so[, instead of] couch[ing] its true objection . . . in the garb of formalistic incantations of lack of personal jurisdiction."). Nowhere in its initial pleading does Qingdao assert that it has insufficient contacts with the State of Arkansas to face a lawsuit in this state. Thus, Qingdao "squandered that opportunity by failing to raise" the lack-of-personal-jurisdiction defense. *Am. Ass'n of Naturopathic Physicians*, *supra*. The fact that Qingdao discussed the lack of minimum contacts in a brief filed a month after filing its answer and motion does not help because the answer and motion made no reference to a forthcoming brief to be considered with the pleading. The lack of minimum contacts was not raised at the first opportunity. It was merely an afterthought to the service-of-process issues that were timely raised along with other affirmative defenses. This was too late.

In its reply brief, Qingdao asserts that it did not waive the objection to lack of personal jurisdiction because in paragraph 60 of its answer and motion to dismiss, it reserved the right to amend and plead further. However, Arkansas Rule of Civil Procedure 15(a) expressly does not permit pleading the defenses mentioned in Rule 12(h)(1) to be raised by later amendment. Despite Rule 15(a), it *is* possible that a defendant may prevent waiver of a Rule 12(b) defense by specifically reserving its objection to the defense in its answer. *Gailey v. Allstate Ins. Co.*, 362 Ark. 568, 574, 210 S.W.3d 40, 44 (2005); *Wallace v. Hale*, 341 Ark.

9

898, 20 S.W.3d 392 (2000). But Qingdao did not *specifically* mention the Arkansas Rule of Civil Procedure 12(b) defenses in paragraph 60. Instead, it simply stated as follows:

> 60. [Qingdao] reserves the right to amend this Answer and to otherwise plead in response to Plaintiff's First Amended Complaint.

The supreme court in *Gailey* held that a general reservation such as Qingdao made here was insufficient to preserve a Rule 12(b) defense (venue). In *Wallace*, the defendant specifically reserved objections to personal jurisdiction and sufficiency of service of process, and the supreme court held that the defendant did not waive them. Therefore, Qingdao has waived its personal-jurisdiction argument, and we need not decide whether it has sufficient minimum contacts with Arkansas.

Next, Qingdao contends that Snyder's express-warranty and negligence claims should not have gone to the jury because there was no evidence to support those claims. The way in which Qingdao argues the case on appeal precludes us from reviewing these issues.

The jury was instructed on Snyder's different causes of action—products liability, negligence, breach of implied warranty of fitness for ordinary purposes, breach of implied warranty of fitness for a particular purpose, and breach of an express warranty. The jury was also instructed as to six elements of damages that Snyder could recover. The damages instructions were general elements of damages and not tied to any one cause of action. The jury answered nine interrogatories as to liability on each of the causes of action. The jury found in favor of Snyder on all nine interrogatories. The jury was not asked to, and did not, make any allocation or apportionment as to the causes of action or the resultant damages.

Although special interrogatories were presented to the jury on the issue of liability under each cause of action, Qingdao challenges the jury's findings only on the express-warranty and negligence claims, leaving the verdicts on the products-liability and implied-warranty claims unaddressed. In such circumstances, we must affirm without addressing the arguments. *See Costner v. Adams*, 82 Ark. App. 148, 121 S.W.3d 164 (2003). This is because when a separate and independent ground that supports a judgment is not challenged on appeal, the appellate court must affirm. *See id*.; *see also Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989) (holding that where the circuit court based its decision on two independent grounds and appellant challenges only one on appeal, the appellate court will affirm without addressing either). Although the rule in *Pearrow* has most commonly been applied in cases involving bench trials, it was applied in a jury-tried case in *Threlkeld v. Worsham*, 30 Ark. App. 251, 785 S.W.2d 249 (1990).

For its third point, Qingdao relies on *Lawhon v. Ayres Corp.*, 67 Ark. App. 66, 992 S.W.2d 162 (1999), and argues that the circuit court erred in admitting certain testimony and an exhibit because they constituted evidence of subsequent remedial measures that should have been excluded under Arkansas Rule of Evidence 407. Snyder argues that the testimony and exhibit were not evidence of a subsequent "measure" taken by Qingdao from which the jury could deduce that negligence had occurred or from which culpable conduct could be deduced. He argues instead that Qingdao simply admitted that its tires had a defect that caused bead separation. We agree with Snyder.

He Weiqi, a Qingdao employee designated as the company's representative under Arkansas Rule of Civil Procedure 30(b)(6), testified by deposition. Through Weiqi, Snyder

introduced a two-page document described as warranty claims made by American Omni, one of Qingdao's United States distributors. Weiqi testified that eighteen of the thirty claims were for bead separation, the same defect leading to the explosion that caused Snyder's injuries. He testified that certain tires were defective. Weiqi further testified at length about changes in the manufacturing process that Qingdao made in September 2013 and that Qingdao had corrected the problems reflected by the warranty claims. Weiqi testified that its tire could not have caused Snyder's injuries because it was manufactured after Qingdao made the changes at its factory. It was revealed that Weiqi was mistaken as to the date of the sale of the subject tire, and it was, in fact, one of the defective tires.

Immediately prior to trial, the circuit court considered the defendants' objection to both Weiqi's deposition testimony and the exhibit. Among the grounds for the objection was that the warranty claims were a subsequent remedial measure. The court allowed the deposition to be read, finding it much more probative than prejudicial. The court did not specifically rule on the objection to Weiqi's testimony, noting "there's going to be plenty of opportunity for [defendants' counsel] to rebut with their argument and their questioning as well." The deposition was read and the exhibit admitted over the defendants' objection.

The admission or exclusion of evidence rests in the sound discretion of the circuit court and will not be reversed absent a manifest abuse of that discretion. *Razorback Cab of Fort Smith, Inc. v. Amon*, 2016 Ark. App. 352, 498 S.W.3d 346. An abuse of discretion is a high standard and occurs when the circuit court acts improvidently or thoughtlessly, without due consideration. *Id.*

Here, there was no abuse of discretion. Weiqi's testimony that all of the tires produced prior to the accident had the same design defect as the tire involved in Snyder's accident was an admission by a party opponent and admissible to prove that the defect existed at the time the tire left Qingdao's control.[5] *See Farner v. Paccar, Inc.*, 562 F.2d 518 (8th Cir. 1977); *Millette v. Radosta*, 404 N.E.2d 823 (Ill. App. Ct. 1980).

Moreover, Qingdao's argument contains no showing of prejudice from the admission of the warranty claims. There was no discussion of prejudice in Qingdao's opening briefs; it is only in the reply briefs that prejudice is discussed. Even then, the argument assumes—without citation of authority—that the admission of the evidence is prejudicial. We will not reverse a circuit court's ruling on evidentiary matters absent a showing of prejudice. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001); *Jackson v. Buchman*, 338 Ark. 467, 996 S.W.2d 30 (1999); *Grummer v. Cummings*, 336 Ark. 447, 986 S.W.2d 91 (1999); *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). It is an appellant's burden to demonstrate and explain reversible error. *Ellis v. Thompson*, 2019 Ark. App. 579, 590 S.W.3d 774.

Finally, Qingdao argues that the circuit court should have ordered a new trial or granted remittitur because the damages award was excessive and not supported by substantial evidence. Citing *Vaccaro Lumber v. Fesperman*, 100 Ark. App. 267, 267 S.W.3d 619 (2007),

---

[5]It does not appear that any party asked to have the jury instructed that this admission could be considered only against Qingdao.

Qingdao argues that the verdict was excessive because Snyder "hit the jackpot" because his medical bills were approximately $93,000 yet he was awarded $2.5 million.[6]

Qingdao's argument focuses on the total amount of the jury's verdict and does not address the evidence submitted to the jury. The jury was instructed on the nature, extent, duration, and permanency of the injuries Snyder suffered; the reasonable expense of any necessary medical care, treatment, and services rendered, including transportation, board, and lodging; the pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future; the value of any earnings, profit, salary, or working time lost; and any scars and disfigurement and visible result of the injury. The jury was given a general verdict form for damages. When special interrogatories concerning damages are not requested, this court is left in the position of not knowing the basis for the jury's verdict, and this court will not question or theorize about the jury's findings. *KW-DW Props., LLC v. Ark. State Highway Comm'n*, 2019 Ark. 95, 571 S.W.3d 6.

Qingdao also argues that the verdict was the result of passion or prejudice in part because it is a Chinese company and had no corporate representative at trial. Snyder's attorney made reference to this during closing argument. However, no objection was made. By not objecting, Qingdao has waived this argument. *Battles v. Morehead*, 103 Ark. App. 283, 291, 288 S.W.3d 693, 699 (2008). Moreover, Qingdao cites no evidence to support this assertion.

We cannot say that the jury's award shocks the conscience of the court.

---

[6]The parties stipulated that Snyder's medical bills totaled $93,388.98. However, the figures given during his testimony add up to approximately $97,000.

This brings us to Snyder's cross-appeal in which he argues two alternative points. First, that Elaine Petroleum's proportionate share of liability should be increased under Ark. Code Ann. § 16-55-203 because the judgment against Qingdao is not "reasonably collectable." Second, that a joint and several judgment should have been entered on the jury's strict-products-liability verdict against both defendants because "fault" plays no part in a strict products liability action.

Snyder concedes that the first point is moot because of the settlement with Elaine Petroleum. That leaves the question of Snyder's claim that the judgment should be joint and several because the Civil Justice Reform Act of 2003 and its abolition of joint and several liability does not apply in products-liability actions. We do not address this issue. First, we do not know how much of Snyder's damages were attributable to the products-liability cause of action as opposed to the other theories advanced by Snyder. It would be speculation to try to apportion Snyder's damages among the various causes of action. Thus, the question of whether joint and several liability attaches in a multi-defendant products-liability case cannot be answered in this case. This court does not issue advisory opinions. *Bollinger v. Farm Credit Midsouth, PCA*, 2021 Ark. App. 112, 619 S.W.3d 398.

Affirmed on direct appeal; cross-appeal dismissed.

GLADWIN and WHITEAKER, JJ., agree.

*Wright, Lindsey & Jennings LLP*, by: *Edwin L. Lowther, Jr.*, and *Troy A. Price*; and *Barber Law Firm PLLC*, by: *G. Spence Fricke*, for separate appellant/cross-appellee Elaine Petroleum Distributor, Inc.

*Louis A. Etoch* and *Robert S. Tschiemer*, for separate appellant/cross-appellee Qingdao Xiyingmen Double Camel Tyre Co., Ltd.

*Charles E. Halbert, Jr.*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellee/cross-appellant.